## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA
## HAMMOND DIVISION

| | | |
|---|---|---|
| RALPH E. ESTES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | NO. 2:06-CV-221 |
| | ) | |
| BETA STEEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

This matter is before the Court on Defendant's Partial Motion to Dismiss, filed by Defendant, Beta Steel Corporation, on August 1, 2006. For the reasons stated below, the motion is **GRANTED**. The Clerk is **ORDERED TO DISMISS** Plaintiff's claims for breach of contract, fraud, misrepresentation, defamation and invasion of privacy **WITH PREJUDICE**. Plaintiff's claim for violation of the Family and Medical Leave Act **REMAINS PENDING**.

BACKGROUND

On June 12, 2006, Plaintiff, Ralph Estes, filed his "Complaint for Breach of Employment Contract by Wrongful Discharge and Violation of Federal Law" against his former employer, Beta Steel Corporation. The complaint makes the following relevant allegations. Estes, an employee of Beta Steel, was a member of the International

Longshoremen's Association, Local 2038 Great Lakes District Council, Atlantic Coast Division, AFL-CIO (hereinafter the "Union").  (Compl. ¶¶ 3, 4.)  On June 12, 2003, Beta Steel and the Union entered into a collective bargaining agreement (the "Agreement")in which "the parties set forth the terms and conditions of employment agreed to by Beta Steel and observed by Union members."  (Compl. ¶ 5.)  Estes alleges that "Beta Steel knowingly used erroneous drug testing results from an unknown person and attributed the positive test results to Estes. Beta Steel fabricated other minor or insufficient events to justify their decision to discharge Estes from his employment, which violated his contractual rights and privileges as a union member and employee under the Agreement."  (Compl. ¶¶ 11, 12.)  Estes also alleges that Beta Steel recently changed its employees' health insurance coverage to a self-insured health care program, and that he takes expensive prescription medications.  (Compl. ¶¶ 13, 14.)  Estes claims Beta Steel's "motivation for discharging Estes from his employment included the increased [sic.] it pays for Estes' prescription medication." (Compl. ¶ 15.)  Estes alleges that "Beta Steel discharged Estes from his employment without cause and in violation of the Agreement, federal law, including the Family and Medical Leave Act of 1993 and of their past practices and procedures.  Under these circumstances Beta Steel's actions constitute fraud, misrepresentation, defamation and invasion of privacy which go beyond the terms of the Agreement." (Compl. ¶ 17.)  Estes seeks attorneys fees and expenses, back wages,

and to be restored to his employment.  (Compl. ¶¶ 19, 20.)  Finally, Estes claims "[t]he Union has elected not to pursue these claims on behalf of Estes due to the legal costs and complexities of the claims."  (Compl. ¶ 20.)

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), Beta Steel has moved for dismissal of Estes' breach of contract, fraud, misrepresentation, defamation and invasion of privacy claims.[1]  Beta Steel argues that Estes' claims under state law are preempted by the Labor Management Relations Act ("LMRA") and the Employee Retirement Income Security Act of 1974 ("ERISA"), therefore, the only possible basis for Beta Steel's claims is under either the LMRA or ERISA.   However, Beta Steel contends that Plaintiff's allegations fail to state a cause of action under either the LMRA or ERISA because Plaintiff failed to exhaust his administrative remedies under the Agreement or the Beta Steel Welfare Benefit Plan, and the Court lacks subject matter jurisdiction over Plaintiff's ERISA claim. Alternatively, Beta Steel argues that Plaintiff's tort claims should be dismissed because they are not properly pled in compliance with the specificity requirements.

---

[1] Beta Steel has not moved to dismiss Estes' claim under the Family and Medical Leave Act ("FMLA"), therefore, that claim survives this motion.  Beta Steel filed an answer to Plaintiff's FMLA claim along with the instant Partial Motion to Dismiss.

DISCUSSION

For the purpose of analyzing Defendants' Rule 12(b)(1) claim, the following standards apply.  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims over which the federal court lacks subject matter jurisdiction.  Jurisdiction is the "power to decide" and must be conferred upon a federal court.  *In re Chicago, Rock Island & Pac. R.R. Co.*, 794 F.2d 1182, 1188 (7th Cir. 1986).  When jurisdictional allegations are questioned, the plaintiff has the burden of proving that the jurisdiction requirements have been met.  *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).  In reviewing a Rule 12(b)(1) motion to dismiss, the Court may look beyond the complaint and review any extraneous evidence submitted by the parties to determine whether subject matter jurisdiction exists.  *United Transp. Union v. Gateway Western R.R. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996).

To the extent Defendants' claims are under Rule 12(b)(6), the Court will apply the following guidelines.  The purpose of a motion to dismiss is to test the legal sufficiency of the complaint, not to decide the merits.  *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir. 1989).  In determining the propriety of dismissal under Federal Rule of Civil Procedure 12(b)(6), the court must accept all facts alleged in the complaint as true and draw all reasonable inferences in the light most favorable to the plaintiff.  *Johnson v. Rivera*, 272 F.3d 519, 520 (7th Cir. 2001).  A court may

-4-

dismiss a complaint only if it appears beyond doubt the plaintiff can prove no set of facts that would entitle her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Further, a court must "construe pleadings liberally, and mere vagueness or lack of detail does not constitute sufficient grounds for a motion to dismiss." *Strauss v. City of Chicago*, 760 F.2d 765, 767 (7th Cir. 1985). A complaint need not plead law or be tied to one legal theory. *LaPorte County Republican Cent. Comm. v. Board of Comm'rs of the County of LaPorte*, 43 F.3d 1126, 1129 (7th Cir. 1994) (citing *Bartholet v. Reishauer A.G. (Zurich)*, 953 F.2d 1073, 1078 (7th Cir. 1992)). A complaint may not be dismissed just because it omits factual allegations, but it may be dismissed when the plaintiff makes clear that she does not plan to prove an essential element of her case. *Id.*

### LMRA Preemption

Beta Steel contends that Estes' breach of contract claim and claims for fraud, misrepresentation, defamation and invasion of privacy (collectively "tort claims") are barred by Section 301 of the LMRA which preempts state causes of action for violation of a collective bargaining agreement. In response, Estes urges that the tortious acts are not inexplicably intertwined with the Agreement, thus the preemptive effect of section 301 does not reach his claims.

-5-

Section 301 of the LMRA states:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).  It is well settled that section 301 preempts any state cause of action for violation of a contract between an employer and a labor organization (i.e., a collective bargaining agreement). *Franchise Tax Bd. of State of California v. Constr. Laborers Vacation Trust for Southern California,* 463 U.S. 1, 23 (1983).  "Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of § 301." *Id.*  Because "[t]he dimensions of § 301 require the conclusion that substantive principles of federal labor law must be paramount in the area covered by the statute," *Local 714, Teamsters, Chauffeurs, Warehousemen and Helpers of Am. v. Lucas Flour Co.*, 369 U.S. 95, 102 (1962), "[s]tate law is [] 'pre-empted' by § 301 in that only the federal law fashioned by the courts under § 301 governs the interpretation and application of collective-bargaining agreements." *United Steelworkers of Am. v. Rawson*, 495 U.S. 362, 368 (1990).

"Furthermore, to prevent clever litigants from evading § 301's broad preemptive force by recasting contract claims as claims brought under state tort law, § 301 preempts tort claims as well[.]" *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 768 (7th Cir. 1991) (citing

*Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)). Collective bargaining agreements generally provide for grievance and arbitration procedures, and, barring certain exceptions, grievance and arbitration is the employee's only remedy for a breach of the agreement. "To escape the exclusivity of the contractual remedies, employees frequently attempt to avoid federal law by basing their complaint on state law, disclaiming any reliance on the provisions of the collective bargaining agreement." *Smith v. Colgate-Palmolive Co.*, 752 F. Supp. 273, 276 (S.D. Ind. 1990). In *Lueck*, the Court reasoned that:

> [Q]uestions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Lueck*, 471 U.S. at 211. Tort claims are preempted where "evaluation of the tort claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213; *see also Lingle v. Norge Div. Of Magic Chef, Inc.*, 486 U.S. 399, 413 (1988) (holding that preemption occurs when a plaintiff's state law claim "requires the interpretation of a collective-bargaining agreement.").

Of course, "[n]ot every dispute concerning employment, or

tangentially involving a provision of a CBA is preempted by § 301 or other provisions of the federal labor law." *Lueck,* 471 U.S. at 211. Section 301 "does not grant the parties to a CBA the ability to contract for what is illegal under state law.  In extending the preemptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to preempt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract." *Id.* at 212.  Where a state law remedy is independent of a collective bargaining agreement in that resolution of the state law claim does not require construing the collective bargaining agreement, preemption is inapplicable. *Lingle*, 486 U.S. at 407.

In analyzing whether Estes' claims are preempted by section 301 of the LMRA, the Court first notes that Estes did not address Beta Steel's argument that Section 301 preempts his breach of contract claim.  Estes has therefore conceded this point.  *See Patterson v. Toyota Motor Mfg., Inc.*, No. 3:05-CV-003 RLY-WGH, 2005 WL 1355479, at *1 (S.D. Ind. June 6, 2005) (finding plaintiff conceded arguments in defendant's motion to dismiss by not addressing those arguments in the response brief).  Even if Estes had not conceded this issue, it is clear that Plaintiff's breach of contract claim requires interpretation of the Agreement.  Section 28.2 of the Agreement requires Beta Steel to have "cause" to discharge bargaining unit employees.  (Agreement, Pl.'s Compl. Ex. A, § 28.2.)  Plaintiff

-8-

alleged that Beta Steel "violated his contractual rights and privileges as a union member and employee under the Agreement" and that "Beta Steel discharged [him] without cause and in violation of the Agreement." (Pl.'s Compl. §§ 12, 17.)  Clearly, Estes' state law contract claim involves questions relating to "what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement," and this must be resolved by federal law. *Lueck*, 471 U.S. at 211; *see also Loewen Group Int'l, Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995) (noting that when resolution of a claim depends on the meaning or interpretation of a collective bargaining agreement, the claim is preempted by section 301).  Therefore, Estes' breach of contract claim is preempted by section 301 of the LMRA.

In considering whether Estes' state tort claims require interpretation of the Agreement, the Court must first examine the state tort law claims.  To plead actual fraud under Indiana law, a plaintiff must set forth the following elements: "(1) a material misrepresentation of past or existing facts by the party to be charged which (2) was false, (3) was made with knowledge or in reckless ignorance of the falsity, (4) was relied upon by the complaining party, and (5) proximately caused the complaining party injury." *Jarvis Drilling, Inc. v. Midwest Oil Producing Co.*, 626 N.E.2d 821, 825 (Ind. Ct. App. 1993).  To the extent Estes also pleads an alternative theory of misrepresentation, that claim also requires the

defendant to make false statements of fact knowing them to be false to induce the plaintiff to act upon them, and that the plaintiff justifiably relied and acted upon the statements made by the defendant to the plaintiff's detriment. *McCutchan v. Blanck*, 846 N.E.2d 256, 264 (Ind. Ct. App. 2006).

Estes asserts, without providing any supporting case law, that the Agreement need not be referred to in evaluating his claim for fraud, arguing that "[t]he facts as plead in the complaint could support claims for fraud and misrepresentation, defamation and invasion of privacy without reference to the Agreement." (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 3.)  Instead of looking to whether the Agreement need be "referred to," the Court believes the proper test is whether "the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement" or, in other words, "requires the interpretation of a collective-bargaining agreement." *Lingle*, 486 U.S. at 405-06, 413.

In this case, it is clear that the resolution of Estes' fraud and misrepresentation claim does indeed require interpretation of the collective bargaining agreement.  This is obvious from Estes' argument in his response brief: "[t]his issue is whether the drug test was knowingly used by the Defendant to defraud the Plaintiff and misrepresent that he, in fact, is a drug user, *justifying his termination*" (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 3 (emphasis added)), and the complaint itself which alleges that Beta

Steel: "knowingly used erroneous drug tests results from an unknown person and attributed the positive test results to [Estes]" and "fabricated other minor or insufficient events to justify [Beta Steel's] decision to discharge Estes from his employment." (Compl. ¶¶ 11, 12.)   Whether Estes' termination was just or not is inextricably intertwined with the terms of the Agreement, which establishes the employment terms and when termination is proper. (*See* § 28.2 of the Agreement which requires Beta Steel to have "cause" to discharge bargaining unit employees.)   This Court rejects Estes' unsupported argument that his tort claims are not inextricably intertwined with the Agreement just because there is no specific provision in the Agreement that determines whether behavior by either party is fraudulent. (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 5.)   The undercurrent of all of Estes' state law claims is that he was wrongfully terminated when Beta Steel falsified his drug test. Because drug testing and the discipline for same is a procedure contained within and governed by the Agreement, Estes' claims for fraud and misrepresentation are inextricably intertwined with the Agreement.

In evaluating Estes' fraud and misrepresentation claims, it would be necessary to review the "Drug and Alcohol Policy and Procedure" attached to the Agreement as Addendum B.   The policy sets forth when drug and alcohol testing will be implemented (for cause, and randomly), the testing procedures (including the requirement that an

employee sign a consent form and chain of custody form assuring proper documentation and accuracy), a confidentiality provision, the policy for re-testing at the election of an employee whose test result is positive, and disciplinary action. (Agreement, Pl.'s Compl. Ex. A, Article 27, Section 27.3: Addendum "B", Drug and Alcohol Policy and Procedure, ¶¶ 4, 5, 9.)  Because Estes basically argues that Beta Steel failed to follow proper drug testing procedure when it allegedly attributed another individual's positive drug test results to Estes, Plaintiff's fraud and misrepresentation claims are based upon Beta Steel's alleged actions and statements made while administering the drug and alcohol policy and discipline procedures provided by the collective bargaining agreement.  This Court believes that Estes' claims for fraud and misrepresentation are inextricably intertwined with the Agreement because Beta Steel's alleged tortious actions stem from an investigation that was made pursuant to the drug and alcohol testing policy which is a part of the Agreement.  As such, the claims for fraud and misrepresentation are preempted by the LMRA.

The Court reaches the same result for Estes' defamation claim. To prove defamation under Indiana state law, "[a] plaintiff must prove the existence of a 'communication with defamatory imputation, malice, publication, and damages.'"  *Trail v. Boys and Girls Clubs of Northwest Indiana,* 845 N.E.2d 130, 136 (Ind. 2006) (quoting *Davidson v. Perron*, 716 N.E.2d 29, 37 (Ind. Ct. App. 1999)).  The Drug and Alcohol Policy and Procedure, attached as an addendum to the

Agreement, provides for the testing procedures, including that "[t]he Employee will be assured that the results of his or her test(s) will be kept confidential as provided by this policy." (Agreement, Pl.'s Compl. Ex. A, Article 27, Section 27.3: Addendum "B", Drug and Alcohol Policy and Procedure, ¶ 5.)  Although Estes' complaint only vaguely alleges defamation (it fails to allege what information was communicated, and to whom it was disseminated), this Court agrees with the analysis of the Northern District of Illinois in *Williams v. Hitachi Zosen Clearing, Inc.*, No. 87 C 5637, 1987 WL 14095 (N.D. Ill. Sept. 24, 1987).  In *Williams*, the Court found that the plaintiff's defamation claim based upon dissemination of drug test results was properly characterized as a section 301 claim because "[d]issemination of the drug test results among management was part of the discharge process, which is governed by the collective bargaining agreement." *Williams*, 1987 WL 14095, at *2; *see also Peffley v. Durakool, Inc.*, 669 F. Supp. 1453, 1462 (N.D. Ind. 1987) (finding defamation claim preempted by Section 301 of the LMRA where "[t]he allegedly defamatory statement at issue [] was contained in a notice from an employer informing the plaintiff of her discharge, an event specifically covered by the collective bargaining agreement.").  Similarly, the alleged defamatory statement in this case (presumably, that Estes tested positive for drugs), also would have been made during the process of Estes' termination pursuant to the drug and alcohol policy, which is an event covered by the Agreement.  Consequently, Estes'

-13-

defamation claim is preempted by Section 301 of the LMRA.

Like Estes' other state tort claims, his claim for invasion of privacy is also preempted by the LMRA.  The Indiana Supreme Court has held that the term "invasion of privacy" is a label used to describe "four distinct injuries: (1) intrusion upon seclusion, (2) appropriation of [name or] likeness, (3) public disclosure of private facts, and (4) false-light publicity." *Felsher v. University of Evansville*, 755 N.E.2d 589, 593 (Ind. 2001).  Although Estes does not embellish on his claim for invasion of privacy more than the bare allegation in the complaint that Beta Steel invaded his privacy, the Court also finds that this claim is inextricably intertwined with the Agreement.  In deciding Estes' claim for invasion of privacy, the factfinder would have to conduct an examination of the Agreement to determine if Beta Steel followed the correct procedure in implementing the drug test and terminating Estes, or whether Beta Steel violated that procedure and terminated him unjustly.  In *Mayne*, the plaintiff stated a claim for invasion of privacy based upon management personnel's alleged disclosure of defamatory statements regarding the plaintiff's drug use to third parties. *Mayne v. B. Green & Co., Inc.*, Civ. A. No. HAR 92-431, 1992 WL 356122, at *1 (D. Md. Nov. 20, 1992). The district court found that such a claim was preempted as it was inextricably intertwined with the collective bargaining agreement because the defendant's alleged tortious conduct arose from an investigation pursuant to the collective bargaining agreement's

-14-

discipline and drug-free workplace provisions.  *Id.* at *3-*4.  Like in *Mayne*, in this case, the drug test and resulting discipline which allegedly violated Estes' privacy arose from the Agreement.

In sum, Estes' claims for breach of contract, fraud, misrepresentation, defamation and invasion of privacy are all preempted by the LMRA.  *See Smith*, 943 F.2d at 769-70 (holding fraud claim preempted under Section 301 of the LMRA); *Kirby v. Allegheny Beverage Corp.,* 811 F.2d 253, 256 (4th Cir. 1987) (finding employee's invasion of privacy claim was preempted because resolution of the claim would involve consideration of the employer's power under the collective bargaining agreement to conduct searches of employees and their cars when drug use was suspected).

ERISA Preemption

Aside from the LMRA preemption, Beta Steel also contends that ERISA preempts Plaintiff's claims.  Estes counters by arguing that his claims cannot be preempted by ERISA because his complaint has already been removed to federal court.  This Court agrees with Beta Steel that Plaintiff has misinterpreted the effect of "complete preemption" under ERISA.

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans."  *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 137 (1990)(quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983)).

-15-

Section 510 of ERISA provides that "[i]t shall be unlawful for any person to discharge . . . a participant or beneficiary . . . for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." 29 U.S.C. § 1140. Thus section 510 protects plan participants from termination motivated by an employer's desire to avoid paying benefits under an ERISA plan.

Section 502(a) provides ERISA's civil enforcement mechanism:

> A civil action may be brought -
>
> * * *
>
> (3) by a participant . . . (A) to enjoin any act or practice w2hich violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan;
>
> * * *
>
> (e)(1)  Except  for  actions  under  subsection (a)(1)(B) of this section, the district courts of the  United  States  shall  have  *exclusive jurisdiction*  of  civil  actions  under  this subchapter brought by . . . a participant.

29 U.S.C. §§ 1132(a)(3), (e) (emphasis added).[2]  The Supreme Court of the United States held in *Ingersoll-Rand* that Congress intended for the substantive rights provided by Section 510 to be exclusively enforced by the comprehensive civil enforcement scheme set forth in Section 502(a) of ERISA.  *Ingersoll-Rand*, 498 U.S. at 142-44.  In fact, "ERISA's legislative history makes clear that 'the pre-emptive

---

[2]ERISA was recently amended by PL 109-280, August 17, 2006, 120 Stat 780.

force of § 502(a) was modeled on the exclusive remedy provided by §
301 of the Labor Management Relations Act." *Id.*, at 144 (quoting
*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 55 (1987)).  Moreover,
in section 514(a) of ERISA, Congress expressly included a preemption
provision which states that:

> Except as provided in subsection (b) of this
> section, the provisions of this subchapter and
> subchapter III of this chapter shall supersede
> any and all State laws insofar as they may now or
> hereafter relate to any employee benefit plan
> described in section 1003(a) of this title and
> not exempt under section 1003(b) of this title.

29 U.S.C. § 1144(a).

As discussed earlier in this decision, Plaintiff's state law
claims all seek damages for Estes' alleged wrongful termination.
Further, Estes claims that Beta Steel's motivation for firing him was
to save money in health care and prescription drug benefits.  (Compl.
¶¶ 14-15.)  As such, *Ingersoll-Rand* compels the conclusion that
Plaintiff's state law claims (both breach of contract and tort
claims), are completely preempted by ERISA.  *See Ingersoll-Rand*, 498
U.S. at 142-45 (ruling state tort and contract claims for wrongful
termination to avoid contributing to or paying benefits under
employee's pension fund were completely preempted under section 510
as provided by section 502(a)).

Beta Steel correctly notes that the effect of this complete
preemption is twofold.  First, ERISA's complete preemption provision
gives this Court federal question jurisdiction over Plaintiff's state

-17-

law claims.  Thus, Estes is correct in his assertion that this case was properly removed to this Court.  *See, e.g., Lingle*, 486 U.S. at 406 n.5 (holding state law claims preempted by section 301 are properly removable to federal court despite a plaintiff's failure to plead a federal cause of action).  However, Estes also seems to believe that the effect of preemption ends upon removal, because he contends that preempting his wrongful discharge claims is illogical if the district court has exclusive jurisdiction.  (Pl.'s Resp. to Def.'s Partial Mot. to Dismiss, p. 5.)  Plaintiff's reasoning is faulty, because the effect of complete preemption continues after removal.  As the Seventh Circuit has noted, "[i]f a state law claim has been displaced, and therefore completely preempted by § 502(a), then a plaintiff's state law claim is properly recharacterized as one arising under federal law."  *Rice v. Panchal*, 65 F.3d 637, 640 (7th Cir. 1995) (quotations omitted).  In other words, because Estes' state law claims are completely preempted, the claims are recharacterized as claims arising under ERISA, and the Court must apply the analytical framework of ERISA to the claims.

Exhaustion of Remedies

Beta Steel contends that Plaintiff has failed to adequately allege that he exhausted the administrative remedies under the LMRA and ERISA; therefore, the complaint should be dismissed.  In response, Estes contends he was excused from exhausting the grievance procedures

because efforts to pursue the grievance procedure would have proved futile, and the Union breached its duty of fair representation to Estes.

The parties do not dispute that both the LMRA and ERISA require a plaintiff to exhaust available administrative remedies before filing suit. Generally, section 301 of the LMRA requires employees to exhaust any grievance or arbitration remedies provided by the collective bargaining agreement before the employee can seek judicial remedies.[3] *See, e.g., DelCostello v. Int'l Bhd. Of Teamsters*, 462 U.S. 151, 163 (1983) ("Ordinarily, however, an employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement."). Similarly, "[a]s a pre-requisite to filing suit, an ERISA plaintiff must exhaust his internal administrative remedies." *Zhou v. Guardian Life Ins. Co. Of America*, 295 F.3d 677, 679 (7th Cir. 2002). The exhaustion requirement applies to Section 510 claims. *See Lindemann v. Mobil Oil Corp.*, 79 F.3d 647,

_____

[3]The Agreement provided a grievance and arbitration procedure, and sets forth specific procedures for filing a claim for benefits as well as appealing a denied claim. (Agreement, Pl.'s Compl. Ex. A, § 29.) To initiate the grievance procedure, "[a]n Employee with a grievance will first immediately approach his immediate salaried supervisor or the most appropriate manager (at the Employee's option with or without Union representation) and verbally present his grievance, seeking an informal resolution of his grievance." (*Id.* § 29.3.) If the employee is unable to resolve his grievance through the first step, either he or the Union may initiate the formal procedure by reducing the grievance to writing. *Id.* Next, Beta Steel has seven days to respond to the grievance. *Id.* Finally, the employee may appeal the written response to arbitration. *Id.*

649-50 (7th Cir. 1996); *Powell v. AT&T Communications, Inc.*, 938 F.2d 823, 825-26 (7th Cir. 1991).

Exceptions exist to both exhaustion requirements. Under the LMRA, an employee may be excused from exhausting the collective bargaining agreement's grievance procedures if: "(1) resorting to the grievance procedure would be futile; (2) the employer through its conduct repudiated the grievance procedure itself; or (3) the union breached its duty of fair representation." *McCleod v. Arrow Marine Transport, Inc.*, 258 F.3d 608, 616 (7th Cir. 2001) (citing *Hammer v. Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am.*, 178 F.3d 856, 858 (7th Cir. 1999); *Roman v. United States Postal Serv.*, 821 F.2d 382, 388 (7th Cir. 1987); *Bailey v. Bicknell Minerals, Inc.*, 819 F.2d 690, 692 (7th Cir. 1987)). Additionally, under ERISA, an exception to the exhaustion requirement exists (1) when the plaintiff is denied meaningful access to administrative procedures; or (2) when exhaustion would prove futile. *Smith v. Blue Cross & Blue Shield United of Wisc.*, 959 F.2d 655, 658-59 (7th Cir. 1992).

<u>LMRA Exhaustion</u>

With respect to Plaintiff's LMRA claim, Estes argues in his response brief that he should be excused from the exhaustion requirement because the Union breached its duty of fair representation, and for futility. Additionally, Estes implies (although he does not clearly make the argument) that he did attempt

-20-

to exhaust the administrative remedies.

The only allegation in the complaint that is even tangentially related to Estes' implication that he exhausted his remedies is the following: "[t]he Union has elected not to pursue these claims on behalf of Estes due to the legal costs and complexities of the claims." (Compl. ¶ 20.)  A letter sent from the Union to Estes, and attached to Estes' complaint as Exhibit B, provides as follows:

> Be advised after discussion with the board meeting of the ILA Local 2038.  This letter is authorizing you to pursue your case on unjust termination outside of perview - The collective Bargaining of Agreement between Beta Steel Corp. and ILA Local 2038 GLDC and Constitutional ByLaw of Local 2038 Beta Steel Division.

(Pl.'s Compl. Ex. B.)  Although Estes argues in his response that it "is obvious by the Union letter that Mr. Estes attempted to pursue his remedies through the grievance process,"   (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 7), because this is a motion to dismiss, the Court only considers whether Estes made the requisite allegations of exhaustion or circumstances to excuse exhaustion, not whether the events actually occurred.  *Rodriguez v. Roofers Local 11*, No. 03 C 3199, 2003 WL 22176081, at *3 (N.D. Ill. Sept. 15, 2003) (citing *Boggess v. Heritage Cadillac*, 1985 WL 5188, at *9 (N.D. Ill. Dec. 30, 1985) (discussing plaintiff's allegations of futility on a motion to dismiss and not the actual futility of pursuing union remedies)).  The only allegation in the complaint (that the Union elected not to pursue the claims due to legal costs and complexities), does not sufficiently

allege that Estes exhausted (or even initiated) intra-Union remedies. And the exhaustion doctrine "contemplates the use of formal remedial procedures." *Rodriguez*, 2003 WL 22176081, at *3.

Further, the complaint fails to provide allegations to support a claim that the Union breached its duty of fair representation to Estes. "A union breaches its duty to fairly represent its members where its conduct toward one of its members is 'arbitrary, discriminatory, or in bad faith.'" *McLeod*, 258 F.3d at 613 (quoting *Crider v. Spectrulite Consortium, Inc.*, 130 F.3d 1238, 1243 (7th Cir. 1997)). As noted by the Court in *McLeod*, this test is quite forgiving because a union's actions "are arbitrary only if in light of the factual and legal landscape at the time of the union's actions, the union's behavior is so far outside a wide range of reasonableness, 'as to be irrational.'" *McLeod*, 258 F.3d at 613 (quoting *Cleveland v. Porca Co.*, 38 F.3d 289, 295 (7th Cir. 1994)). "This 'wide range of reasonableness' gives the union room to make discretionary decisions and choices, even if those judgments are ultimately wrong." *McLeod*, 258 F.3d at 613 (quoting *Marquez v. Screen Actors Guild, Inc.*, 525 U.S. 33, 45-46 (1998)). Although a union must provide "some minimal investigation of employee grievances," "only an egregious disregard for union members' rights constitutes a breach of the union's duty." *McLeod*, 258 F.3d at 613 (quoting *Garcia v. Zenith Elecs. Corp.*, 58 F.3d 1171, 1176 (7th Cir. 1995)). Courts are generally reluctant to overthrow the union's function of construing a collective bargaining

agreement, therefore, this Court is "highly deferential" in reviewing a union's duty.  *McLeod*, 258 F.3d at 613.

In his response brief, Plaintiff cursorily argues that the letter the Union sent to Estes (attached to Plaintiff's Complaint as Exhibit B), reflects the breach of the duty of fair representation because it contains several grammatical and typographical errors and is not dated.  (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 6.)  Even considering this argument (which is not alleged in the complaint or supported by any facts in the record but only surmised in Estes' memorandum), Estes has come nowhere near satisfying his burden of showing that the Union's behavior "is so far outside a wide range of reasonableness, as to be irrational."  *McLeod*, 258 F.3d at 613 (quotations omitted).  It appears the Union did indeed minimally consider Estes' claims, and declined to pursue them because of their complexity.  There is nothing irrational or egregious in the Union's alleged decline to handle Estes' claims because they are complicated. Estes contends the members of the Union are only laypersons without specialized knowledge, implying they were not qualified to handle his complaints.  (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 7.) Again, this fails to meet the standard of egregiousness necessary to prove a breach of the duty of fair representation by the Union.

Estes also argues in his memorandum (without setting forth any allegations in his complaint) that the mechanism of the grievance arbitration procedure would have been futile and that "the Union's bad

faith in refusing to continue to represent Mr. Estes as a union member thwarted the completion of the grievance process." (Pl.'s Resp. To Def.'s Partial Mot. To Dismiss, p. 7.) "It is easy to hurl charges of 'bad faith'," but "accusations of 'bad faith' do not excuse an attempt to use the grievance-arbitration machinery." *Bailey*, 819 F.2d at 692. Estes has provided no allegations to support a claim of futility sufficient for the Court to waive the exhaustion requirement. "Plaintiffs must allege either that they attempted to exhaust intra-union procedures, or facts sufficient for the court to conclude that any such attempt would be futile." *Rodriquez*, 2003 WL 22176081, at *3. Plaintiff has failed to do so, and Estes' unsupported argument in his memorandum of bad faith is insufficient to provide that the arbitration procedure would have been futile. *See Vogel v. Cummins Engine Co., Inc.*, 971 F.Supp. 374, 383 (S. D. Ind. 1997) (dismissing claim where complaint contained no factual allegations indicating plaintiffs actually initiated the grievance process under the collective bargaining agreement or that such attempts would have been futile). Having failed to prove that he exhausted the grievance and arbitration procedures (or was excused from doing same), Estes' claims warrant dismissal. *See Bailey*, 819 F.2d at 692-93.

ERISA Exhaustion

Under ERISA, an exception to the exhaustion requirement exists (1) when the plaintiff is denied meaningful access to administrative

procedures; or (2) when exhaustion would prove futile. *Smith*, 959 F.2d at 658-59. Estes seems to argue in his response memorandum both that he was denied meaningful access to administrative procedures and that exhaustion would have proved futile (even though he fails to make these allegations in his complaint). Plaintiff does not allege that he made any effort to comply with the complaint procedure provided in Beta Steel's Welfare Benefit Plan or the Agreement.

In order to fall under the futility exception, Estes "must show that it is certain that [his] claim will be denied on appeal, not merely that [he] doubt[ed] an appeal [would] result in a different decision." *Smith*, 959 F.2d at 659. This case is like *Zhou* (except in this case Estes did not even initiate the grievance procedure), in which,

> Save for bald allegations and conclusory statements, [plaintiff] has proffered no facts that would lead this court to find that it was a certainty that further administrative appeal would result in a denial of his claim. When a party has proffered no facts indicating that the review procedure that he initiated will not work, the futility exception does not apply.

*Zhou*, 295 F.3d at 679. Because Estes has alleged no facts tending to show that the review procedure would not work, the futility exception is inapplicable. Estes' failure to exhaust the administrative remedies under ERISA dooms his claims, and they are subject to dismissal.

Finally, this Court notes that because Estes failed to properly allege exhaustion of remedies under ERISA, this Court declines to

analyze Beta Steel's alternative argument that the Court lacks subject matter jurisdiction over Estes' ERISA claim because Estes seeks legal remedies, not equitable relief.  The Court also need not reach Beta Steel's arguments that Plaintiff's claims for defamation, invasion of privacy, and fraud fail for the separate reason that they are not properly pled with the requisite degree of specificity.


CONCLUSION

For the reasons set forth above, Defendant's Partial Motion to Dismiss is **GRANTED**.  The Clerk is **ORDERED TO DISMISS** Plaintiff's claims for breach of contract, fraud, misrepresentation, defamation and invasion of privacy **WITH PREJUDICE**.  Plaintiff's claim for violation of the Family and Medical Leave Act **REMAINS PENDING**.


DATED:  November 7, 2006          /s/RUDY LOZANO, Judge
                                  **United States District Court**

-26-